UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                        No. 1:23-mj-00230-RSK

                                        Hon. Raymond S. Kent

ANDREW BLAIR HOWARD           U.S. Magistrate Judge

                Defendant.

_____/

**DEFENDANT ANDREW BLAIR HOWARD'S
SUR-REPLY TO GOVERNMENT'S REPLY BRIEF**

       In this Court's Order of April 11, 2024, rescheduling the Sentence Hearing in this matter to May 15, 2024, it ordered that the Defendant be permitted to file a sur-reply to the reply brief (ECF No. 24) that the government filed on April 22, 2024.  (ECF No. 23)  Accordingly, this Brief is submitted.

       Simply put, the parties disagree that Defendant Andrew Howard diverted the Platte River.  Without belaboring the trial testimony in this matter, one thing is abundantly clear.  At the time that Mr. Howard appeared at the beach in the late afternoon of August 15, 2022, the Platte River had already been diverted to Lake Michigan by way of a channel cut by others through the sand to the lake, that having occurred at least one hour beforehand.  That occurrence, the opening of the channel, was a calamitous event, resulting in the spectacular

flow of water into Lake Michigan.  Anything that Mr. Howard did, characterized as "enhancing" the newly created flow of the river, was in reality insignificant.  When those genuinely undisputed facts are understood, the clear and not surprising conclusion is that restitution should not be ordered in this matter.

This Brief will discuss the arguments made by the government in support of its claim for restitution.  It will address each of those arguments in turn.

In sum, the reasons why restitution should not be ordered are that Mr. Howard was not convicted of an offense against property under Title 18, something required under the Mandatory Victim Restitution Act (MVRA) 18 U.S.C. § 3663A(1)(c)(2)(ii) .  Additionally, under the provisions of the MVRA, "but for" and "directly and proximately" causation requirements are not met.  Finally, as regards restitution as a condition of probation, available to the Court under a different statutory provision found in the Sentencing Reform Act of 1984 (SRA) 18 U.S.C. § 3563(b0(2), the causation elements required in the MVRA are not relaxed and any suggestion by the government to the contrary is unavailing.[1]

I.    The Trial Testimony and the Court's Findings.

As mentioned above, Mr. Howard takes issue with the overarching conclusion that the government suggests that he dug the channel permitting the Platte River to cut across the sand into Lake Michigan.  The government's portrayal of the testimony of the witnesses at trial and in particular the effect of Mr. Howard's actions, suffers from severe exaggeration.  As the Court will recall, Defendant's Exhibit S is a receipt from the Frankfort Hardware store time-

---

[1]As will be discussed below and to the contrary, imposing restitution as a condition of probation would allow the Court to apportion the restitution amount to be fairly and justly apportioned among those responsible for the diversion of the river and Defendant Howard.

stamped 4:23 p.m. on August 15, 2022 - some forty-five minutes travel time away.  This was a receipt *obtained* by Mr. Howard.  This receipt was admitted at Mr. Howard's *request* and by the government's *stipulation*.  This receipt shows that he was elsewhere when the channel opened the Platte River to Lake Michigan.

Another example, the testimony that the government refers to that was given by witness Jamie Nelson describes Andy Howard building an "increasingly taller structure" of rocks into the existing channel parallel to the shoreline in the river's old channel.  Important to evaluating that testimony is that the exhibits and testimony of NPS Officer Logan Bahm identified what were referred to as "wing dams" that existed in the river *well prior to the events of the afternoon of August 15, 2022*.  (Logan Bahm: "I had not seen any diversions or structures divert flow out towards a new river mouth like I had that day.") The wing dams, as the photographic evidence showed, existed prior to the river's diversion.  Again, as seen from the photographs entered as exhibits at trial.

Similarly, Ms. Nelson (who arrived at the river at 3:45 pm.) testified that the water that she noticed flowing in the river's new channel was rippling around and that it "starts to hit the sand on the other side."  Nothing in her testimony describes *when* she saw Andy Howard, who arrived at 5:30 pm.  That information does not establish anything that Andy Howard did.  That information describes the entire event of the opening of the channel - an opening that the witnesses described as the entire event - the channel's creation and its subsequent enlargement from but a trickle to, over the following days, its vast enlargement.  That happened as the water in the new channel grew as it washed away sand in its path.

In fact, a series of witnesses testified to the placement of rocks by Mr. Howard.  No genuine issue was raised about whether he did that or not.  But the important question is how

3

Andy Howard's conduct contributed to how the channel was made and its ultimately enlarging into the significant geologic event it eventually became.

As to what ultimately happened to the channel - its ever-widening - witness Kirk Walby testified that "after *tossing a few rocks*" Mr. Howard walked over to him to talk - Andy Howard's thinking that the placement of the rocks were doing some good to divert the flow of the river. The reality is that what happened to the Platte River that day was going to happen after the trench was dug to the lake.  Period.  This occurred, and would have occurred no matter what Andy Howard's intentions, or more importantly, his actions caused.

To reiterate what was included in the Defendant's Response to the government's initial sentencing memo, Officer Bahm offered the following at trial:

> Q And generally, between August 15th and August 18th, I don't
> need specific measurements, but generally what happened to that
> diversion?
>
> A The diversion grew in width, and more -- it seemed more
> water had started flowing out in that direction.

(ECF No. 19, PageID.75)

> Q Would it be fair to say a handful of rocks, half dozen?
>
> A I would say that.

(ECF No. 19, PageID.80)   A half dozen rocks.

In conclusion, it is a fair statement to say that based on the witnesses appearing at trial neither party wants the Court to conclude that Andy Howard was responsible for the channel's opening the Platte River's path to Lake Michigan.  That was an event that occurred prior to Mr. Howard's arrival in the late afternoon of August 15, 2022.

4

II.    <u>Restitution is not available under 18 U.S.C. § 3663A</u>.

The Defendant discussed the issue that restitution is not available under the Mandatory Victims Restitution Act in its initial Response to the governments sentencing memorandum. (ECF No. 22, PageID.330-35) Therefore, this Brief will confine itself to the response (ECF No. 24, PageID.352-356) made by the government on that issue.

The government correctly states that 18 U.S.C. § 1865 PROVIDES THAT "[a] person that violates any regulation authorized by section 100751(a) of title 54 shall be imprisoned not more than 6 months, fined under this title, or both, and be adjudged to pay all costs of the proceedings." That is precisely what the statute says. Importantly, the word "violates" is included. The first question, therefore, is what did the defendant violate? For purposes of resolving the issue, he violated the provisions of regulations that are, first of all, authorized by section 199751(a) of Title 54, and included in regulations in 36 C.F.R. § 1,3(a). Those were the regulations that prohibited vandalizing and tampering. Those are not violations (and the Defendant did not *violate*) any provision of Title 18 of the United States Code. Without question, the penalties that the Defendant faces are set forth in Title 18.

But the question remains, whether the defendant committed an offense against property under Title 18, because in order for the restitution statute to apply, the offense must be "(ii) (ii) an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit;".

That question is easily answered - at different levels. Broadly speaking, the "offenses" for which the Defendant stands convicted are vandalism and tampering. Those offenses are found outside Title 18 as mentioned above. Those are also the offenses that involve the

5

Defendant's *conduct* that is the focus of the restitution provisions of the MVRA that are discussed below.

A further point on the issue is raised by the government's statement that "[c]riminal penalties for a violation prescribed under this section **are provided by section 1865 of title 18.**" (bold in original) That is correct. Criminal *penalties* are provided in *that* section of Title 18. However, the "offense against property" is not provided under Title 18.

Or put another way, the prohibited conduct of the Defendant is not under Title 18.

Finally, the provisions of Section 1865 do nothing more than prescribe penalties for the violations of regulations. The Defendant did not commit any offense under Title 18 because, unlike the variety of offenses (including offenses against property) set forth in Title 18 of the United States Code, his offenses are found outside Title 18. The *penalties* are not the charges in this matter; the *penalties* are not the violations; the *penalties* are not the offenses.

A plain reading of the 18 U.S.C. § 3663A(c)(A)(ii) compels the conclusion that restitution is not available under that provision.

The government's resort to discussing the legislative history of 18 U.S.C. § 1865 is equally unavailing. A court does not resort to legislative history to cloud statutory text that is clear. *Ratzlaf v. United States*, 510 U.S. 135, 147-48, 114 S. Ct. 655, 126 L. Ed. 2d 615 (1994). "Extrinsic materials" like legislative history "have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *United States v. Banyan*, 933 F.3d 548, 553 (6th Cir. 2019). On the other hand, the concession that the legislative history of the statute is necessary to resolve what the government perceives is an ambiguity is further support for the Defendant's position. A rule of

lenity applies in matters such as these.

.Here, according to the government, any ambiguity can be resolved by reference to legislative history.[2]  Were the Court to conclude that the provisions of the restitution statute were subject to two rational readings, our Supreme Court has held that the choice of either reading ought be subject to the "rule of lenity" favoring a defendant.  "We have long held that, when confronted with 'two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language.'" *Pasquantino v. United States*, 544 U.S. 349, 383, 125 S. Ct. 1766, 1787 (2005).  (internal citations omitted)

The government argues that the Defendant's citation to *United States v. Petit*, 541 F.Supp. 3d 304 (2021) for the proposition that 18 U.S.C. § 2, the aiding and abetting statute, does not turn a conviction for securities fraud (under Title 15) into an offense for which restitution can be had under § 3663A(c)(1)(ii).  The government asserts that it has a better case to follow, *United States v. W. Indies Transport, Inc.*, 127 F.3d 299 (3d Cir. 1997).  But that case adds nothing to the analysis here for the reason that in that case *18 U.S.C. § 2 was actually charged for each violation outside Title 18*.  ("Each Title 33 offense *also charged a violation of 18 U.S.C. § 2*. Restitution is authorized for violation of 18 U.S.C. § 2." *United States v. W. Indies Transp.*, 127 F.3d 299, 315 (3d Cir. 1997) (italics added)) In this matter no reference in any charging document is made to 18 U.S.C. § 2.

To use Section 2, uncharged, to apply § 3663A(c)(1)(A)(ii) in this case would swallow

---

[2]The Sixth Circuit has held that restitution ordered as part of a criminal sentence is punitive. *United States v. Sizemore*, 850 F.3d 821, 829 (2017).

up the rule, more particularly the mention of Title 18 in § 3663A;  There would be no reason for Congress to include mention of Title 18 because the effect that the government wants to give § 2 would be that it makes a host of offenses against the United States that exist within the various titles of the United States Code. (*e.g.*, tax offenses under Title 26, drug offenses under Title 21, etc.) subject to restitution and thus, 18 U.S.C. § 2 would always apply whether charged or not.  The effect is to make Congress's inclusion of its language regarding Title 18 in § 3663A superfluous.[3]

3.    <u>The importance of foreseeability and causation</u>.

Defendant Howard discussed the issue of restitution for investigations (ECF No. 22, PageID.335-38) in this matter in his response to the government's initial Sentencing Memo (ECF No. 23).

The government replies by stating that restitution can be ordered under a different sentencing statute (18 U.S.C. § 3563(b)(2))[4].

One important point must be made.  Despite the existence of language in that statute broadening it "without the limitations" language contained in the restitution statute discussed above, § 3663A, limitations of foreseeability and causation still exist were the Court to impose restitution as a condition of probation under 18 U.S.C. § 3563(b)(2).   "The statute defines a 'victim,' for the purposes of restitution, as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may  be ordered . . . ." 18 U.S.C. §

---

[3]Every word within a statute is there for a purpose and should be given its due significance.  *Russello v United States*, 464 U.S. 16, 23, 78 L.Ed. 2d 17, 104 S.Ct . 296 (1983)

[4] The Defendant agrees that restitution under that statute would be in the Court's discretion.

3663(a)(2).  *United States v. Kaminski*, 501 F.3d 655, 669 (6th Cir. 2007). (italics supplied)
The restitution amounts claimed for investigation by the government are not recoverable given
well-established definitions of causation.  No authority cited by the government allows
elements of foreseeability or causation to be relaxed for restitution claimed under that Section.

Accepting that the government paid money to itself for the costs of investigating what to
do about the change in the Platte River's direction, the issue remains whether it was "directly
and proximately harmed".

"Victim" is defined as:

[A] person directly and proximately harmed as a result of the commission of an
offense for which restitution may be ordered including, in the case of an offense
that involves as an element a scheme, conspiracy, or pattern of criminal activity,
any person directly harmed by the defendant's criminal conduct in the course of
the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).

The requirement that the victim be directly and proximately harmed is often described in
terms of "foreseeability":

The Government must also show that the type of harm suffered by OPM
was a reasonably foreseeable consequence of Defendant's criminal behavior. In
legal parlance, that Defendant was the proximate cause of OPM's harm. See
*Paroling v. United States*, 572 U.S. 434, 444-45, 134 S. Ct. 1710, 188 L. Ed. 2d
714 (2014) ("A requirement of proximate cause thus serves [] to preclude liability
in situations where the causal link between conduct and result is so attenuated
that the consequence is more aptly described as mere fortuity.") (citing *Exxon
Co., U.S.A. v. Sapphic, Inc*. 517 U.S. 830, 838-39, 116 S. Ct. 1813, 135 L. Ed.
2d 113 (1996)).

*United States v. Devote*, No. 2:17-CR-00013, 2018 U.S. Dist. LEXIS 214724, at *3-4 (E.D.
Tenn. Dec. 21, 2018).

"We first note that phrase "directly and proximately" uses the conjunctive "and," which
indicates that direct harm and proximate harm have separate meanings."  *United States v.*

9

*Seaman*, 594 F.3d 1165, 1171 (10th Cir. 2010).  The determination is fact-intensive.  *United States v. Stone*, 866 F.3d 219,226 (4th Cir. 2017).

In its Reply Brief the government discusses instances in which restitution was ordered for pecuniary losses without any argument that the Defendant's conduct in this case caused the losses in any direct and proximate way.  Without belaboring the Defendant's previous discussion of the issue, without identifying *how* the government's choice to enlist a helicopter days later and conduct an environmental study much later than that were directly and proximately caused by the Defendant's conduct, it is difficult to respond to the broad claim for restitution made.  Some things can be said, however.  Those things focus on the facts in *this* case.

The decision to enlist the United States Coast Guard to take pictures of the area was made, presumably, following discussions between appropriate authorities.  The fact that those discussions occurred is evidence severing the causal connection between the Defendant's conduct and the government's incurring expenses by the Coast Guard.  In short, the decision could have been made *not* to fly a helicopter over the area and to take pictures.  Similarly, deliberations and decision-making regarding an environmental study were held, presumably, with the goal of deciding whether to conduct a study or not.  The decision could have been made to *no*t conduct any study.  Those deliberations sever the directness of the harm purportedly caused by the Defendant's actions.  It was after a period of decision making that those choices were made.  The expenses incurred were the result of choices the government made on its own without regard to the Defendant's conduct.

The time that passed between the Defendant's conduct (assuming it caused the

government to incur expenses) and the government's actually incurring those expenses is also relevant because a *temporal* element is also relevant.[5]

Furthermore, analyzing the *facts* in *this matter* as regard an element of foreseeability leads to the same conclusion.  What was foreseeable to Andy Howard's conduct in moving sand and rocks in the direction that the Platte River had been routed at the time that he appeared at the beach late in the afternoon of August 15, 2022?  Was it foreseeable that his conduct would cause the involvement of a helicopter and an environmental study - were those things to occur either instantaneously or any time later?  The answer is clearly no.  Nothing in any of the government's analysis points in the direction that the harm that the government now claims was foreseeable from the Defendant's conduct.

As mentioned in the Defendant's Response to the governments initial sentencing memo, all of the foregoing resulted in nothing more than investigative costs with no further actions being taken in remediation of the diversion of the river to Lake Michigan.

Finally, the government argues that Andy Howard has received a "windfall" because the National Park Service chose not to take action to restore the river to its prior state.  He has received no windfall anymore than if Mr. Howard were to claim responsibility for the river's

---

[5]In evaluating restitution claims, other Circuits have adopted a similar fact intensive approach, asking whether the specific loss claimed by the victim is too remote, either factually or temporally, from the conduct forming the basis of the offense. The First Circuit, for example, has adopted a causation standard under which  the [*25] government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally). *United States v. Vaknin*, 112 F.3d 579, 590 (1st Cir. 1997)
.

diversion and, without being glib, that the government has received a windfall in having to remove less sand now that it has decided to dredge and keep the river open to Lake Michigan. The restitution statutes are what they are and should be fairly applied in this matter.

4.      Discretion to apply the probation/restitution statute.

As stated above, the Defendant agrees with the government when it says that imposition of restitution under § 3563(b)(2) would be discretionary.  Were restitution to be ordered in this matter as a condition of probation, something the Defendant believes would be inappropriate under the "but for', "directly and proximately caused" and "reasonably foreseeable" standards discussed above, it would be an opportunity for the Court to identify the minimal role, if any, that the Defendant played in the diversion of the Platte River to Lake Michigan and apportion his restitution accordingly.

Respectfully submitted

Dated: May 2, 2024                          /s/ Anthony J. Valentine
                                            Anthony J. Valentine
                                            Attorney for Defendant
                                              Andrew Blair Howard
                                            Ste. 227, 29 Pearl Street, N.W.
                                            Grand Rapids, MI 49503
                                            (616) 288-5410
                                            tonyvalentinelaw@gmail.com