1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE WESTERN DISTRICT OF MICHIGAN

3                    SOUTHERN DIVISION

4     UNITED STATES OF AMERICA,

5              Plaintiff,          No: 1:23mj230

6      vs.

7     ANDREW BLAIR HOWARD,

8              Defendant.

9

10    Before:

11                    THE HONORABLE RAY KENT
                      U.S. Magistrate Judge
12                    Grand Rapids, Michigan
                      Tuesday, June 25, 2025
13                    Sentence Proceedings

14    APPEARANCES:

15              MR. MARK A. TOTTEN, U.S. ATTORNEY
                By:  MS. LAUREN BIKSACKY
16              MS. MEAGAN JOHNSON
                330 Ionia Avenue, NW
17              Suite 501
                Grand Rapids, MI 49503
18              (616) 456-2404

19                        On behalf of the Plaintiff;

20              MR. ANTHONY J. VALENTINE
                227 Federal Square Building
21              29 Pearl Street, NW
                Grand Rapids, MI 49503
22              (616) 288-5410

23                        On behalf of the Defendant.

24              Also Present:  Scott Dekkers, NPS.

25    REPORTED BY:  MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR

1      06/25/2024

2      (Proceedings, 2:00 p.m.)

3      THE CLERK:  United States District Court for the

4   Western District of Michigan is now in session.  The Honorable

5   Ray Kent, United States Magistrate Judge, presiding.  Please be

6   seated.

7      THE COURT:  This is 23mj230, United States versus

8   Andrew Howard.  Ms. Biksacky, Ms. Johnson on behalf of the

9   United States.  Mr. Valentine on behalf of Mr. Howard.  This is

10   the time and place set for sentencing in this matter.

11      Following a bench trial on February 7 I found

12   Mr. Howard guilty of one count of tampering and one count of

13   vandalism as charged in the Class B information.  The maximum

14   sentence that I could impose upon conviction of those offenses

15   is imprisonment for not more than six months, a fine of not

16   more than $5,000, probation of not more than five years, a

17   mandatory special assessment in the amount of $10, restitution

18   and the cost of proceedings.

19      I did not order a presentence investigation or the

20   preparation of a presentence report in this matter.

21      The parties have filed voluminous documents directed

22   at sentencing, including the government's opening sentencing

23   memorandum, which is at ECF 20, Defendant's opening memorandum,

24   ECF 21, the Defendant's response to the government's opening,

25   ECF 22, the government's reply brief to that, ECF 24,

1    Defendant's surreply brief at ECF 25, and a notice of updated

2    restitution costs filed by the government at ECF 27.  I have

3    read all of those documents and their attachments.

4           In order to perhaps not spend time unnecessarily, I

5    want the parties to know that I do not intend to rule on

6    whether the mandatory victim's restitution act applies.  The

7    parties made reasoned arguments for and against application of

8    the act in their filings, but it's unnecessary for my decision.

9           All right.  Who will be speaking on behalf of the

10   United States?

11          MS. BIKSACKY:  Your Honor, I would briefly address the

12   nonmonetary penalties and then hand over the duration of the

13   argument, if the Court is amenable, to Ms. Johnson, who is in

14   charge of our financial litigation department at our office and

15   who will address the monetary issues.

16          THE COURT:  That's fine.

17          MS. BIKSACKY:  Because this was a bench trial, I am

18   fully aware that the Court was present for and fully understood

19   all of the evidence that came in at trial and so I won't

20   belabor much of the proofs as it relates to sentencing, but

21   instead, focus on what the government believes would be an

22   appropriate and adequate sentence based on the seriousness of

23   the conduct that the Court did hear the evidence for.

24          So in this case, although intent was not required to

25   be shown as an element of the offense, I think the evidence

1    more than adequately established that the Defendant intended to

2    take the actions he did and intended to alter the course of the

3    river, and we saw him do so with a shovel that he purposefully

4    bought for that purpose.  We saw him do that over an extended

5    period of time both in moving the rocks, and in his words,

6    enhancing the original trench, and so the government believes

7    that this was not a mere accidental issue that could be written

8    off, but that some sort of, in this case, probationary

9    sentence, would be appropriate here.

10           The government is not --

11           MR. VALENTINE:  Excuse me.  I apologize.  I did not

12   hear one word.  Some sort of what?

13           MS. BIKSACKY:  Some sort of probationary sentence.

14           MR. VALENTINE:  Thank you.

15           MS. BIKSACKY:  Some sort of probationary sentence

16   would be appropriate.  In this case the government is not

17   seeking a period of detention.  We would ask either for a

18   supervised or unsupervised probationary sentence at the Court's

19   discretion, and what the government is really interested in and

20   the National Park Service is really interested in, is a

21   potential ban.  And I have consulted with AUSAs and law

22   enforcement officers from other national parks in the country,

23   including Yellow Stone National Park, and I learned from them

24   that one thing that they commonly ask for and that they

25   commonly receive in situations involving damage to our national

1    resources, is a ban for the period of probation, and I do not

2    anticipate any issues upholding that ban.  And so we would ask

3    that whatever -- if, indeed, the Court does impose a

4    probationary sentence, it would include a ban for Mr. Howard

5    accessing or going upon National Park Service land, which would

6    include the Sleeping Bear Dunes National Lake Shore.

7          Now, I understand that sometimes boundaries are not

8    always clear.  They may involve some highways or different

9    thoroughfares driving through a region, and that Mr. Howard

10   does have a vacation home up north by the Platte River, and so

11   the government's request -- and this is not meant to impose

12   anything unduly restrictive on his travel around the county or

13   things of that nature, but really aimed at curbing his conduct

14   and imposing a penalty for his conduct.

15         We know from the trial that he is an avid fisherman.

16   He referred to the Platte River as his home river.  He

17   indicated he had a special parking permit or residence near the

18   river, and I have spoken with the National Park Service.  They

19   have observed Mr. Howard fishing in the area already this year.

20   And so the government thinks that imposing a ban from

21   Mr. Howard accessing the National Park Service land at Sleeping

22   Bear Dunes would, in essence, show Mr. Howard that he can't

23   take the actions that he did and then expect to reap the

24   benefits of those ill-advised actions.

25         And so with the ban, Mr. Howard would then necessarily

1    need to travel north or south to access Lake Michigan for his

2    fishing.  It wouldn't be the most direct route, because as the

3    Court heard, the most direct route is through that river where

4    the channel emerged.  And this would provide some deterrence,

5    both for Mr. Howard and others, and make sure that Coho Andy is

6    not fishing for coho on National Park Service land that he

7    damaged.

8            And so with that, Your Honor, I would pass the

9    microphone to Ms. Johnson, unless the Court has any questions

10   regarding probation?

11           THE COURT:  I don't.  Thank you.

12           MS. BIKSACKY:  Thank you.

13           MS. JOHNSON:  Hello, Your Honor.

14           THE COURT:  Hello.

15           MS. JOHNSON:  We are here this afternoon -- and I know

16   Your Honor said that you did not intend to impose mandatory

17   restitution so I'll leave those arguments aside.

18           THE COURT:  Thank you.

19           MS. JOHNSON:  But we are here because Mr. Howard

20   committed an offense against the United States because he had a

21   policy dispute, and he took those matters into his own hands

22   and frankly cost a lot of financial damage to the park, to the

23   coast guard, and -- and to the government for those.  And apart

24   from the mandatory restitution statute --

25           THE COURT:  Yeah.  The parties agree I can impose

1    restitution as a condition of probation.

2    MS. JOHNSON:  Correct.  So under 3563(b) the Court has

3    the discretion to impose restitution.  That discretionary

4    imposition looks initially whether the Court should impose

5    restitution at all, and then once the Court decides to impose

6    restitution it should impose restitution for the full amount of

7    the victim's losses under 3664.  So that's how that statutory

8    scheme goes.

9    We submitted costs for the National Park Service

10   restitution costs of $12,868 that was caused when Defendant --

11   after the damage to the river caused significant ecological

12   harm to the wetlands, to the flow of the river.  And the

13   National Park Service dispatched employees.  It dispatched

14   hydrologists.  It spent a lot of time and money trying to

15   figure out if any of those -- if any of the wildlife needed to

16   be rehabilitated, if the -- if the river needed to be

17   rehabilitated, and the cost to the wildlife if -- if the river

18   was rehabilitated.

19   And at the end of that investigation it was determined

20   that the cost to the wildlife, to the -- those endangered

21   species and plants would be too significant because of the

22   disruption -- additional disruption to the land, and so they

23   decided to leave the river be, but it doesn't mean that it

24   doesn't cost a significant amount of money and time and

25   resources that the United States Government would not have had

1    to spend had Mr. Howard not taken those actions into his own

2    hands, which is what he did here.

3            They had -- you know, the coast guard spent time and

4    money and fuel flying.  That is a loss of property that was

5    spent that the government wouldn't have spent otherwise, the

6    resources.  And the case law is clear that when a government is

7    spending money to fix harm that was foreseeably caused by his

8    conduct, that that harm can be compensated through restitution,

9    and the United States would ask that that harm be repaired

10   because I think that by not doing that, not just in

11   Mr. Howard's case, but for others who would want to take the

12   law into their own hands for policy disputes, they might

13   believe that the punishment of probation or a park ban is worth

14   the cost of their crime.

15           In addition, the statute 1865 has sort of a unique

16   provision for cost of proceedings that's not commonly incurred

17   in criminal statutes, but it says the Court shall impose those

18   costs, and we submitted costs from the travel expenses for the

19   rangers to travel to the trial and for the costs that the

20   government spent having witnesses come to this trial, and so

21   those are the costs of proceedings that the United States would

22   request that the cost impose.

23           In our notice -- updated notice we put a chart in

24   there that has the different expenses on the reasoning for

25   those with, you know, the payees for those expenses.  And so

1    the United States would -- would ask that those costs be

2    imposed.

3              Before I conclude, are there any specific areas that

4    the Court would like me to address?  Our briefing is voluminous

5    but if there is anything that the Court is particularly

6    concerned about I can address that.

7              THE COURT:  I thought I understood you to say just now

8    that you were seeking restitution in the amount of $12,000 and

9    some.  I thought it was 22,000.

10             MS. JOHNSON:  It's 12,000 for the National Park

11   Service, 9,000 for the costs that the Coast Guard incurred.  So

12   it's $22,472 total.  I apologize if I omitted that.

13             Sure.  So the National Park Service cost is $12,868

14   that they incurred.  The coast guard spent an additional

15   $9,603.93 for a total restitution request of $22,472.22.  For

16   cost of proceedings we are requesting for the ranger travel

17   $2,113.07, the trial travel expenses of --

18             THE COURT:  You don't need to break it down

19   individually.  That's okay.

20             MS. JOHNSON:  Any further questions, Your Honor.

21             THE COURT:  I don't.  Thank you.  Mr. Valentine.

22             MR. VALENTINE:  Thank you, Your Honor.  For the court

23   reporters benefit I can state the amount of restitution that I

24   think the Defendant is obligated to pay in this matter.  I can

25   state it really clearly.  It's zero, for the reasons that we

1    included in our briefs, and I am not sure where we stand on

2    that issue.  Costs incidentally are a different issue and we

3    don't quarrel with the government's assessment or excuse me

4    their estimated -- their submissions regarding costs.  I think

5    those are clearly recoverable.  I think that as best I could

6    find, costs would be what they put in their memo.

7         But I do want to clarify one thing, and that is that

8    on the restitution issue it appears to me as though the Court

9    has, I am not sure, an idea as to where it's going with that or

10   does not.

11        THE COURT:  Yes.

12        MR. VALENTINE:  And thus doesn't need to hear any

13   further argument that was included in our submissions.  By that

14   I mean all of the parties' submissions.

15        THE COURT:  Correct.  On the mandatory victim

16   restitution act issue.  I made a decision not to go there.

17        MR. VALENTINE:  Thank you, Your Honor.

18        Inasmuch as the government has set forth a condition

19   of probation that it wants the Court to impose, which was the

20   primary -- primary subject of their -- their comments, I want

21   to reply to that first.

22        And that is that I think -- and the Court is going to

23   hear from Mr. Howard on what he perceives to be the conduct for

24   which he accepts responsibility, which if this were a

25   sentencing under a different statute, we'd find ourselves

having the Court to address, but I do want to -- I do want to

remind the Court, I don't mean to say that in any sort of

aggressive manner, but some of the comments that the Court made

when it was rendering its decision regarding Mr. Howard's guilt

in this case were along the lines that he loves that -- he

loves that river.  He cares about it.  Lifelong time up there

on that river.  In fact, yes, Mr. Howard has been up there

during the course of these proceedings which have gone on for

well over a year.  There has been no incident as to his

behavior there other than the conduct in this case, and that --

that, Your Honor, would be a condition of probation that I

think would -- would -- would really -- would really hurt.  Not

that probation isn't a matter of punishing, but when

Ms. Biksacky says that otherwise the Defendant benefits from

his actions in this case, Your Honor, any benefit you might

identify that Mr. Howard has received, and he's fished there

just like he has before, is far outweighed by what he's

experienced being a Defendant in a federal criminal case, going

to trial on it.

        And you know, if you think about probation in this

case, Mr. Howard has been on a non-reporting at least

supervision by the probation office.  I think Ms. -- I think

Christina Snow is his supervising officer.

        THE DEFENDANT:  Right.

        MR. VALENTINE:  And without incident met all of the

1      conditions of that probation.  So just in terms of putting in

2      perspective this alleged benefit that he receives through his

3      actions in this case are -- I think they are more than -- more

4      than outweighed by the -- the negative and frankly disrupting

5      experience it's to be a defendant in this matter before Your

6      Honor.  Not that he wasn't treated with respect and dignity as

7      are all Defendants before Your Honor, but at the same time I

8      don't perceive any benefit there.

9            As far as Mr. Howard goes and his respect, you know,

10     this week and-a-half before our sentencing here last week and a

11     little bit before that Mr. Howard was out west.  What was he

12     doing?  He was visiting national parks.  I think he went to

13     three of them, one of them being Yellow Stone, and obviously no

14     incidents that I am aware of.  I suspect you can inquire of

15     Mr. Howard whether or not there were, but he is somebody who

16     has an appreciation, who has a respect for our -- our -- our

17     national parks and for wildlife that are not -- that just don't

18     evaporate looking at -- you know, we just can't -- can't ignore

19     that and in an hour or so in the afternoon in August a couple

20     years ago as something that is -- is not who Mr. Howard is, and

21     it is not -- it's not -- isn't reflective of his -- of his

22     appreciation of the national parks.

23           I submitted a sentencing memo.  I don't think there is

24     any genuine issue -- the initial sentence -- excuse me, the

25     initial sentencing memorandum that I submitted said I think

1    some very positive things about Mr. Howard.  Talked a little

2    bit about his background, about his education, what he's done

3    with his life, and what he is -- his family situation.  I am

4    not going to belabor that.  His appreciation and respect for

5    the environment, his activities but also his -- also his

6    participation in organizations such as the Michigan Chapter of

7    the Ruffed Grouse Society.

8            He's done the very same things up there, Your Honor,

9    that you have done.  He's kayaked that river.  He has spent a

10   lot of time in that area and is somebody who I think his

11   actions over the course of his life indicate a respect and

12   appreciation for -- for the outdoors and for parks, the

13   national parks in particular, that don't require the Court take

14   any action to either disturb or to change in any way.

15           I think the Court has other sanctions.  We expect a

16   fine will be imposed in this matter.  We expect that there may

17   be other sanctions, but at the same time we would respectfully

18   request that that bar from the national parks for somebody like

19   Andy Howard not be imposed.

20           That's all I have.  Thank you very much.

21           THE COURT:  All right.  Thank you, Mr. Valentine.

22           MR. VALENTINE:  I mean, I am willing to answer, of

23   course, any questions you may have.

24           THE COURT:  I actually have none, Mr. Valentine.

25   Thanks.

1          MR. VALENTINE:  Thank you.

2          THE COURT:  Mr. Howard, anything you'd like to say to

3     me before I impose sentence on you?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  If you would, sir, come to the

6     podium.

7          MR. VALENTINE:  May I stand next to Mr. Howard at the

8     lectern?

9          THE COURT:  Of course.  Absolutely.

10          MR. VALENTINE:  Thank you.

11          THE DEFENDANT:  There is even water handy.

12          First of all, I would like to thank you for the

13     opportunity to speak on my defense.

14          Your Honor, some of the comments you made in the court

15     transcription, page 158, line 1, Mr. Howard, your actions did,

16     in fact, damage the river.  Remember the river was dredged in

17     that same location using massive equipment for 48 years.  You

18     yourself enjoyed kayaking the Platte River and said you took

19     the long ride down the beach and enjoyed it.

20          On transcript page 153, line 7 through 11, you said, I

21     don't believe that the river could have been dredged by hand or

22     plastic shovels.  A real shovel was involved.  When my best

23     witnesses, Laura Collegia and Amy Roche, witnessed 15 teenagers

24     dredging the river with photographic and video evidence.

25          I was curious, do you believe I was involved in any

1    way in diverting the river prior to 5:30 p.m. on August 15th?

2         THE COURT:  Mr. Howard, we are not -- I am not going

3    to get into a question and answer session with you.  You are

4    happy to tell me whatever you want to tell me.

5         THE DEFENDANT:  Okay.

6         THE COURT:  And I will listen.

7         THE CLERK:  I accept responsibility for any of my

8    actions in life but not for something I didn't do.  My best

9    efforts could not have stopped the new diversion of the river

10   when I arrived.  If my intent was to force the flow of the

11   river back to the old river bed with my shovel and moving

12   rocks, I could not have reversed the 20-foot wide raging

13   current that I -- that was occurring when I came down.

14        I wanted to run through to just really confirm the

15   timeline of what occurred from our photo evidence in the court

16   case.  On Exhibit M that we presented on 2:27 p.m., we have the

17   water just beginning to flow through the original trench that

18   was dug.

19        On Exhibit L at 2:51 p.m., we have rock wing damns,

20   huge rock wing damns, and you can see in the background the

21   girl inner tubing down the new trench the river approximately

22   six to eight feet wide.

23        On Exhibit P at 3:08 p.m., we have multiple children,

24   teenagers, digging with their hands just as witnesses

25   testified, working on the new diversion of the river.  And note

1    the width of the flow and the power of the current in such a

2    short timeline from 2:27 to 3:08.

3            Exhibit G, 4:03 p.m., the diverted river with kids

4    digging as witnessed by Laura and Amy, again, with the rock

5    damns.  And Laura and Amy are even in the picture.  Laura was

6    with her daughter and friend from 9:00 a.m. throughout the

7    entire day.

8            Exhibit N is 4:11 p.m.  Again, I wanted to note the

9    width and the amount of current.

10           And then Exhibit S -- pardon me, Exhibit O, is a kind

11   of another picture of the newly diverted river with the level

12   of current.  All of this occurring before any witness said that

13   I was even present.

14           And there even was I felt a misunderstanding in the

15   case of the Frankfurt hardware receipt at 4:23 p.m., which I

16   produced under the direction of my attorney, of an alibi of

17   where I was at when I left the river at noon to clean my fish,

18   and 4:23 with the drive time from Frankfurt back to the river

19   would put me back there at around the 5:30 timeline, which was

20   what was confirmed by several witnesses.

21           Not one witness said I was present during the initial

22   diversion of the river.  Rock wing damns were already present

23   before Andrew Howard arrived.  My actions after 5:30 p.m. were

24   of no significance to the river outcome.  I should not be

25   paying for helicopter photos or environmental studies or be

1    banned from the park for something I didn't do.

2            From the court transcript governor witness Officer

3    Balm.  Witness seen me digging at 6:20 p.m.

4            THE COURT:  All right, Mr. Howard, these arguments I

5    am sure will all be made to the Sixth Circuit Court of Appeals

6    in Cincinnati and you are welcome to do that.  We are not going

7    to rehash the whole trial here --

8            THE DEFENDANT:  Okay.

9            THE COURT:  -- and argue about your conviction.  If

10   there is anything you wish to say to me on the issue of your

11   sentencing, happy to listen.  Otherwise, we are going to move

12   on.

13           THE DEFENDANT:  Okay.  I'd like to give one example of

14   what I felt would be a comparative act, example to my actions.

15   I think it could be compared to someone saying they are going

16   to buy a knife and kill someone and leave the location and buy

17   a knife and come back five hours later to find the person I was

18   going to kill laying on the ground stabbed to death.  Then law

19   enforcement arrives and sees me standing over the dead body

20   with a knife accusing me of the murder, when the man I came

21   upon was already dead.  My actions were of no consequence and

22   would not have changed the outcome.

23           So my request to you in sentencing would be to listen

24   to my perspective of the amount of damage or involvement that I

25   had.  My statements of what I was going to do looked terrible.

1     My being down there with a shovel was terrible.  And I read

2     your comments in the transcript through three times, and I felt

3     I was pretty impressed actually with the balanced thoughts that

4     you had on both sides of the issue, but I felt that the level

5     of penalty -- even though, yes, I was digging in the new

6     trench, I think the level of penalty that the government is

7     seeking is too heavy for the amount of damage that occurred

8     from my arrival.

9           If I thought I was committing a crime, I wouldn't have

10    been there in broad daylight standing out there.  Some of the

11    witnesses said I was very relaxed, and I felt that in the

12    transcript that there -- that you may have misinterpreted me

13    saying I really dodged a ticket.  My comment to the witness

14    that I really dodged a ticket, it was Kurt Walbey, wasn't that

15    I got away with a crime.  It was that I was fortunate.  I was

16    actually thanking God that I came down after someone else

17    diverted the river and it was opened up.  Because my intentions

18    were bad.  But I didn't feel that I dodged a ticket because I

19    knew I was down there committing a crime.  If I thought I was

20    committing a crime and the river was already opened up I would

21    have put that shovel over my shoulder and been running back to

22    the car.

23          THE COURT:  Mr. Howard, I am not sure you are helping

24    yourself on appeal with your comments now, so I would just

25    suggest if there is other things you want to say maybe run them

1    past Mr. Valentine --

2                THE DEFENDANT:  Okay.

3                THE COURT:  -- first and I am happy to listen.

4    Otherwise, time to move on.

5                THE DEFENDANT:  Okay.

6                THE COURT:  I don't want you to harm your case moving

7    forward, and I am not sure -- I am concerned that you may be

8    doing that in some way, so you may be seated.

9                THE DEFENDANT:  Okay.

10               THE COURT:  Ms. Biksacky, I neglected to ask whether

11   there were any victims present who want to speak?

12               MS. BIKSACKY:  We do have representatives from the

13   National Park Service present, Your Honor.  However, they will

14   not be giving any victim statement.

15               THE COURT:  Okay.  Thank you.

16               It's my duty to impose a sentence sufficient but

17   not --

18               MS. BIKSACKY:  Your Honor, I apologize.

19               THE COURT:  Yes.

20               MS. BIKSACKY:  Ms. Johnson has instructed me that

21   there is one procedural aspect that she would like to address

22   before the Court issues its ruling.

23               THE COURT:  Okay.

24               MS. JOHNSON:  Yes, Your Honor.  I just wanted to note,

25   because if you impose restitution it would be under a term of

1    probation, and so the payment term, if you impose restitution,

2    needs to be over the term of probation because restitution

3    wouldn't exist beyond probation.  So if you impose restitution

4    make sure the payment schedule it is over -- its long enough

5    that it covers the whole term of the payment schedule.  The

6    probationary term.

7            THE COURT:  Well, I am not sure that's possible and

8    yet reasonable.  I mean, the government -- if I put Mr. Howard

9    on probation, and order him to pay restitution -- I mean, when

10   his term of -- you are saying when his term of probation

11   expires it extinguishes his obligation to pay the rest of the

12   restitution?  Is that what you're saying?

13           MS. JOHNSON:  That's correct, Your Honor.  If you

14   impose it under that statute it's only for the term of

15   probation, and so you could have unsupervised probation, it

16   just needs to be -- if you are imposing restitution as a term

17   of that probation, it needs to be concurrent with that term.

18   You can impose it due and payable immediately, and then, you

19   know, we could establish something separate, but you're -- it's

20   only due during his probationary period.

21           THE COURT:  By something separate you mean you could,

22   through Mr. Howard's counsel, work out some kind of payment

23   schedule?  Is that what you are saying.

24           MS. JOHNSON:  Sure.  Yeah.  I mean, that's possible as

25   well, but I just wanted you to know that the payment term is --

1    the funds are only due during a term of probation.

2        THE COURT:  Well, I appreciate you telling me that

3    because I didn't know that.

4        Mr. Valentine, any thoughts on that subject?

5        MR. VALENTINE:  Well, Your Honor, as we indicated in

6    our memo, we don't think restitution is appropriate under the

7    Mandatory Victim's Restitution Act.

8        THE COURT:  Right, and I agree with you on that.

9        MR. VALENTINE:  Or the --

10       THE COURT:  Well, I don't agree with you.  I am not

11   ruling on the MVRA.

12       MR. VALENTINE:  Got you.  I mean, yes, Your Honor.

13   The second thing is that we don't think restitution is

14   appropriate under the probation statute that the government has

15   indicated it wants probation to be imposed under either for the

16   reasons that we indicated in our submission.  Thank you.

17       THE COURT:  Understood.  Okay.

18       Well, Ms. Johnson, you have thrown a monkey wrench

19   into my work, so it's better to figure it out now then have to

20   deal with it later.  All right.  We are going to take a short

21   pause.  Can I see Officer Jabour in chambers, and we'll come

22   back out here in the very near future.

23       THE CLERK:  All rise, please.  Court is in recess.

24       (Recess taken, 2:32 p.m.)

25       (Resume Proceeding, 2:41 p.m.)

1              THE CLERK:  Court is back in session.  Please be

2      seated.

3              THE COURT:  All right.  We're back on the record.  I

4      think I have a way to impose the sentence I intended to impose

5      by adjusting some of the terms.

6              So back to where I was.  It's my duty to impose a

7      sentence sufficient but not greater than necessary to comply

8      with the purposes of sentencing set forth in 18 United States

9      Code § 3553(a).  I have considered all non-frivolous arguments

10     in support of a request for a lower sentence.  I have

11     considered the 3553 factors, including the nature and

12     circumstances of this offense, the history and characteristics

13     of the Defendant.  Mr. Howard has never been convicted of a

14     crime as far as I know.  To reflect the seriousness of the

15     offense, promote respect for law, provide just punishment,

16     afford adequate deterrence to Mr. Howard and others, and the

17     kinds of sentences available.

18             The Platte River was carved out between 10 and 20

19     thousand years ago by the Lake Michigan lobe of the great

20     continental glacier that covered much of North America.  It's

21     30 miles long.  It's powerful.  It dumps about 3.3 million

22     gallons of water per hour into Lake Michigan.  The fact that

23     the course of this beautiful and ancient river could be altered

24     with a common garden shovel is a stark illustration of how

25     fragile the natural world can be and underscores how important

1    the mission of the National Park Service to protect and

2    preserve our natural spaces for the benefits of all Americans

3    really is.

4          Mr. Howard, I am placing you on probation for a term

5    of 60 months.  While on probation you will be subject to

6    mandatory conditions of probation, which include that you not

7    commit a crime, which I have no expectation that you will.  You

8    can't unlawfully use or possess any controlled substance,

9    including marijuana.  I don't know if you do or not but you

10   can't.  And there are other conditions that Officer Jabour --

11   who will be your probation officer is here in court.  When we

12   are finished you will go down to the first floor and meet with

13   him.  He'll get you set up on probation, and he'll go over the

14   other mandatory conditions.

15         There are standard conditions.  You report to him as

16   directed.  You are truthful -- you truthfully answer questions

17   put to you by him.  You are not to communicate or interact with

18   someone you know is engaged in criminal activity.  I -- I don't

19   expect that of you.  And there are a lot of other conditions.

20   Again, Officer Jabour will go over those with you.

21         I am also imposing additional special conditions and

22   those include a ban from entering onto National Park Service

23   property anywhere in the United States.  So actually, I was

24   glad to hear that you have been to Yellow Stone.  There are

25   more than 400 such properties I believe around the United

1    States.  It's going to be incumbent upon you wherever you are

2    to know the boundaries and to stay off of those properties.

3         The parties agree that I can impose restitution as a

4    condition of probation.  Mr. Valentine has made arguments in

5    his extensive briefings about foreseeability and causation,

6    that I make those part of my analysis, and foreseeability of

7    the damage.  And there is no question that you foresaw the

8    damage because you told the officer you came down there

9    intending to cut open that channel.  So not only could you

10   foresee it, but you intended it.  And the evidence was clear

11   that you aided in the causation of that.  You were seen digging

12   in the trench.  You were seen moving rocks onto the wing damns

13   to help channel the water out through that cut through the

14   sand.

15        Mr. Valentine also argued eloquently that there was no

16   remediation here.  In other words, ultimately the park service

17   decided not to attempt to restore that section of lake shore

18   back to its original condition, and the government, I think,

19   phrased that as the windfall argument.  I am not going to call

20   it that, but I will say this.  The park service did a study.

21   That's exactly what anyone should expect to happen under those

22   circumstances.  The damage has been done.  The first thing you

23   do is assess the damage and figure out what to do about it.

24   What can be done about it?  And ultimately the park service

25   decided that attempting to put the river back in its original

1    course would require heavy equipment and that the risk that

2    that process posed to the environment would only have

3    exacerbated and multiplied the damage done by opening the

4    original trench, and so it elected not to do that.  And I'll

5    say this, Mr. Howard, I think if they had decided to do it,

6    we'd be talking about a restitution number probably in the

7    hundreds of thousands of dollars.

8            I know you are upset because you feel like you are

9    getting tagged for the whole amount of restitution, and you

10   are.  Federal law provides for that.  There are cases cited by

11   the government in its brief.  I am sure that Mr. Valentine has

12   looked at those cases.  I would just say including U.S. v

13   Church.  What do I have here?  731 F3 530.  And also an

14   unpublished case U.S. v Buchanan, 2023 Westlaw 5352223, which

15   address these issues.  And you know, it's simply the fact that

16   at times crimes are committed, damage is done, not all the

17   perpetrators are caught, but those that are caught are held

18   responsible for the entire amount of the damage because the

19   law -- we as a society through the law say it shouldn't be the

20   victim who bears the cost.  If there is an inordinate cost to

21   be born here, and we have only got one of the three people who

22   did the crime, that person should bear the cost.  That's a

23   decision that's been made in the law for a long time.  And

24   although I understand your feelings, they are unfounded.

25           So I am going to order -- include as a special

1    condition that you also pay restitution in the amount of

2    $22,472.22 payable in equal monthly installments of $500 per

3    month beginning 30 days from the entry of this judgment.

4         Also, I am ordering you to pay the costs of

5    proceedings in the amount of $3,947.71 to be paid in full

6    within 30 days from the entry of judgment, and a mandatory

7    special assessment of $10.

8         Now, Mr. Howard, this is not exactly the sentence I

9    intended to impose, but I want to make sure the restitution is

10   paid.  So if the restitution is paid in full on or before the

11   end of the 24th month of your probation, which begins at the

12   entry of judgment, I will consider an early termination of your

13   probation, and if you have also been in compliance with the

14   other conditions, so you have stayed out of the national park

15   lands and haven't run afoul of any of the other conditions, and

16   you have paid the restitution, I'll consider terminating your

17   probation at the end of 24 months as opposed to 60.

18        Any objections to the sentence imposed not previously

19   raised, Ms. Biksacky?

20        MS. JOHNSON:  Your Honor, the United States would just

21   reserve its arguments with respect to mandatory restitution.

22        THE COURT:  Sure.

23        Mr. Valentine?

24        MR. VALENTINE:  I am confused.  I am not sure what --

25   what that means.

1    THE COURT:  I'll tell you what I think it means, which

2    maybe isn't determinative here, but what I think it means is

3    the United States is reserving its right to appeal my decision

4    not to impose restitution under the MVRA.

5    MR. VALENTINE:  All right.

6    THE COURT:  Am I correct?

7    MS. JOHNSON:  Yes.

8    THE COURT:  Okay.

9    MR. VALENTINE:  All right.  Well, that's fine, and I

10    understand it now, too.

11    The other thing, though, Your Honor, is that I think

12    you may have indicated that the parties agree on restitution

13    under the probation statute.

14    THE COURT:  Well, the parties agree that I can impose

15    restitution.  I didn't mean to suggest you agreed on the

16    amount.

17    MR. VALENTINE:  We don't agree that you can impose

18    restitution under that statute, and I can --

19    THE COURT:  Well, in your filing, Mr. Valentine,

20    surreply to government's reply brief ECF 25, at page ID 480,

21    "The government replies by stating that restitution can be

22    ordered under a different sentencing statute.  The Defendant

23    agrees that restitution under that statute will be in the

24    Court's discretion."  The footnote.

25    MR. VALENTINE:  Okay.  Well then --

1         THE COURT:  And you can change your position.  I was

2    just relying on the position stated in your brief.

3         MR. VALENTINE:  And -- and our position would be that

4    the Court would be abusing its discretion under that statute

5    and that it wasn't appropriate, and I'll read what I stated in

6    that memo as well as the prior memo --

7         THE COURT:  Absolutely fair.

8         MR. VALENTINE:  -- and felt that that was something we

9    objected to.

10         THE COURT:  Okay.

11         MR. VALENTINE:  And therefore, I guess I need to say,

12    and as much as this is a sentence under the sentence reform

13    act, that whether or not it is, that we object to the Court's

14    disposition of the issues they raised that were decided against

15    us.  Thank you.

16         THE COURT:  All right.  Thank you, Mr. Valentine.

17         All right.  Anything else -- Mr. Howard, I am

18    obligated to notify you of your right to appeal both your

19    conviction and sentence.  You have the right to appeal your

20    conviction and the right to appeal a sentence you believe was

21    illegally or incorrectly imposed.  If you cannot afford to pay

22    the costs of an appeal, you have the right to apply for leave

23    to appeal in forma pauperis and the clerk of the Court will

24    prepare and file a notice of appeal upon your request.  Any

25    notice of appeal must be filed within 14 days of entry of this

1    judgment, which is likely to happen in the next day or so.

2                 Ms. Biksacky, anything else?

3                 MS. BIKSACKY:  Nothing further from the government.

4    Thank you.

5                 THE COURT:  Mr. Valentine?

6                 MR. VALENTINE:  Nothing, Your Honor.  Thank you.

7                 THE COURT:  All right.  Mr. Howard, I hope to see you

8    in 24 months and to be terminating your successful term of

9    probation.

10                 MR. VALENTINE:  May I be heard on one thing, Your

11   Honor, and that is that we did raise in our reply brief the

12   issue under whether -- under the probation statute that the

13   Court is referring to in imposing restitution that the same

14   issues of but for, directly and proximately caused and

15   reasonably foreseeable were issues that the Court could not

16   conclude existed --

17                 THE COURT:  Yes.  You did.  And I thought I had

18   addressed those in my remarks.

19                 MR. VALENTINE:  You have ruled on it.  I just didn't

20   want the record to reflect that somehow we thought that, well,

21   accept for the amount --

22                 THE COURT:  Okay.

23                 MR. VALENTINE:  Except for the amount, that the -- the

24   only thing under the probation statute restitution would be the

25   amount, but no, no, no, we believe that it was inappropriate

1    for causation reasons as well for the Court -- inappropriate

2    for the Court -- pursuant to causation reasons, for the Court

3    to order restitution under that statute.  Thank you.

4            THE COURT:  You are welcome.  All right.  We'll be

5    adjourned.

6            THE CLERK:  All rise, please.

7            (Proceeding concluded, 2:55 p.m.)

REPORTER'S CERTIFICATE


    I, Paul G. Brandell, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.


              /s/ Paul G. Brandell

              Paul G. Brandell, CSR-4552, RPR, CRR

              U.S. District Court Reporter

              399 Federal Building

              Grand Rapids, Michigan  49503