UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANDREW BLAIR HOWARD,

    Defendant.
_____/

Case No. 1:23-mj-230

Hon. Robert J. Jonker

## OPINION

### INTRODUCTION

The Magistrate Judge found defendant Howard guilty after trial of two misdemeanors for diverting the Platte River from its natural channel within Sleeping Bear Dunes National Lakeshore directly into Lake Michigan, upstream of its natural mouth. As part of the Judgment of conviction, the Magistrate Judge imposed restitution against Howard for the expenses the National Park Service and U.S. Coast Guard incurred in assessing the damage caused to park resources and evaluating remediation alternatives. Howard challenges the restitution award on appeal. Because the Magistrate Judge applied the correct legal standard and did not commit clear error or abuse his discretion in applying that standard, the Court affirms the decision of the Magistrate Judge.

### BACKGROUND

**I. Factual Background**

Sleeping Bear Dunes is a national park that was established in 1970. Act of Oct. 21, 1970, Pub. L. No. 91-479, 84 Stat. 1075 (1970). The United States Department of Interior's National Park Service ("NPS") administers and operates Sleeping Bear Dunes. The park spans 70,000 acres along 65 miles of shoreline and has two ends: the northern and southern. The southern end

includes the shoreline of Platte Bay and the mouth of the Platte River. The river covers 29.5 miles, beginning at Long Lake and emptying into Lake Michigan. The final leg of the river winds through the southern end of the park before its natural mouth into Lake Michigan. Along that final leg but naturally separated from it by the river's sandbanks are the open waters of Platte Bay.

Platte Bay is known for excellent salmon fishing. (Trial Tr. 11, ECF No. 19). For more than 60 years, anglers have fished Platte Bay. (*Id.*) To reach Platte Bay naturally, an angler like Howard must navigate his boat down the Platte River's natural channel until it empties into Lake Michigan. (*See id.* at 11-12). Then, he would go back through open water to the fishing area at Platte Bay. (*Id.* at 10-11). Howard and other anglers would prefer to cut directly into the bay upstream from the river's natural mouth, saving time and avoiding navigation difficulties. (*Id.* at 11-12).

Before 2016, Howard and other anglers were able to do that. (*Id.* at 12). That is because before 2016, the NPS allowed dredging or other activity that would divert the river's natural flow. (*See id.* at 12-13). In 2016, however, the NPS prohibited any activity that would divert the river's natural flow into Lake Michigan. (*Id.* at 12-13). The NPS did this because it found that continued intervention into the river caused ecological harm. (*See id.*) Its studies revealed that restoration efforts were necessary to protect and restore endangered species like the piping plover and other endangered wildlife. (*See id.*) So, since 2016, anglers had to navigate the entire river channel before doubling back to the bay through the open waters of Lake Michigan. (*Id.* at 108). Navigating the whole channel almost always took longer and was much more challenging. (*See id.* at 10-11, 108).

Obviously, anglers, including Howard, did not like the NPS's ban on dredging. They joked about taking an excavator down to the river and dredging a new channel. (*Id.* at 126). On August

15, 2022, Howard decided he would dredge the channel, but not with an excavator. (*Id.* at 17-18). That day, he purchased some shovels and arrived at the river ready to dig. (*Id.* at 109, 111). When he got to the river, he saw that someone had already cut a path from the river through the sandbar and into Platte Bay. (*Id.* at 114). Howard decided not to abandon his plan; he dug deeper into the pre-existing cut and moved rocks until he successfully diverted the river's flow into the bay. (*Id.* at 115-119). The result was a new, 200-foot channel from the Platte River into the Platte Bay. (*Id.* at 75-76).



**(Before and after August 15, 2022, dredging of Platte River)**



**(Defendant Howard moving rocks to force the river into Platte Bay, August 15, 2022)**

After being notified of the diversion, the NPS and U.S. Coast Guard evaluated the damage and analyzed the necessary and possible remedial measures. (*Id.* at 69-70); (Sentencing Tr. 24-25, ECF No. 36). The National Resource Division conducted field assessments and consultations with the NPS specialists. (Trial Tr. 69-70; *see* Sentencing Tr. 7). The U.S. Coast Guard deployed a helicopter to conduct an aerial assessment of the riverbank. (Government's Sentencing and Restitution Mem. 7, ECF No. 20). After careful consideration, the NPS decided not to employ remedial measures because such measures would exacerbate ecological damage. (Sentencing Tr. 24-25).

## II. Procedural Background

On May 23, 2023, the United States charged Howard (via information) with two Class B misdemeanors: one count of tampering within the boundaries of a national park and one count of vandalism within the boundaries of a national park (both in violation of 18 U.S.C. § 1865).

(ECF No. 1). The Magistrate Judge conducted a bench trial on February 7, 2024, and found Howard guilty on both counts. (ECF No. 33). The Magistrate Judge pointed out that Howard admitted to an NPS officer that he was adding to the existing cut in the sandbank. (Trial Tr. 153; *see also* Government's Trial Ex. C at 01:20-01:30). And the officer observed Howard shoveling sand and adding rocks to the pre-existing cut. (*Id.* at 153-54). As many as four other witnesses observed the same—with one witness testifying that Howard told her he was trying to widen the channel enough to get his boat through to Lake Michigan. (*Id.* at 153-55).

During the bench trial and Howard's sentencing, the Magistrate Judge rejected various arguments advanced in Howard's appeal. The Magistrate Judge explained during the bench trial that ignorance of the law is no defense to violating the law and that regardless of the extent to which Howard's conduct contributed to the ultimate diversion of the river, his conduct was plainly illegal. (*Id.* at 157). During the sentencing, the parties agreed that the Magistrate Judge had discretion to impose restitution as a condition of probation. (Sentencing Tr. 6-7). The government sought approximately $12,868.00 for the costs incurred by the NPS in evaluating the damage caused by the diversion of Platte River and approximately $9,604.00 for the costs incurred by the U.S. Coast Guard. (*Id.* at 9). Howard, however, posited that he "should not be paying for helicopter photos or environmental studies or be banned from the park" because the diversion of the Platte River was already in progress when he arrived on August 15, 2022. (*Id.* at 16-17). He further argued that restitution was inappropriate where the NPS opted not to remediate the diversion of the river. (*Id.* at 24). He argued that his conduct was not the but-for or proximate cause of the diversion of the river.

The Magistrate Judge ultimately sentenced Howard to 60 months of probation and imposed $22,472.22 of restitution as a condition of probation. (J., PageID.547-550). The Magistrate Judge

5

acknowledged that Howard was upset because he "fe[lt] like he was getting tagged for the whole amount of restitution." (Sentencing Tr. 25). But the Magistrate Judge explained that allocating the entire restitution cost to Howard, the known perpetrator of the river diversion, was consistent with settled law. (*Id.* at 25-26). Howard now objects to the award as an abuse of discretion. (ECF No. 34).

## ANALYSIS

### I. The Magistrate Judge did not abuse his discretion in ordering Howard to pay $22,472.22 in restitution as a condition of probation.

The parties have one disagreement that sparks this appeal. They agree that restitution is permissible as a condition of probation for losses that were both the "but-for" and "proximate result" of Howard's conduct. The fundamental dispute, then, is whether Howard's conduct was the but-for and proximate cause of the government's harm. The Magistrate Judge found that it was. On this record, the Magistrate Judge committed no clear error or abuse of discretion in so finding.

#### A. The Magistrate Judge's restitution order is subject to abuse of discretion review.

Restitution orders are subject to a bifurcated standard of review. *United States v. Hamad*, 300 F. App'x. 401, 407 (6th Cir. 2008) (citation omitted). First, "[w]hether a restitution order is permitted under the law is subject to de novo review. . . ." *United States v. Elson*, 577 F.3d 713, 720 (6th Cir. 2009) (citing *United States v. Johnson*, 440 F.3d 832, 849 (6th Cir. 2006)). Second, the amount of restitution ordered is subject to abuse of discretion review. *Johnson*, 440 F.3d at 849 (quoting *United States v. Wood*, 364 F.3d 704, 714 (6th Cir. 2004)). "An abuse of discretion occurs when a ruling is based on an error of law or a clearly erroneous finding of fact, or when the reviewing court is otherwise left with the definite and firm conviction that the district court committed a clear error of judgment." *United States v. Kumar*, 750 F.3d 563, 566 (6th Cir. 2014)

6

(citations omitted). As noted, the parties agree that the Magistrate Judge was permitted to order restitution.[1] The issue is whether the Magistrate Judge's order of $22,472.22 in restitution was an abuse of discretion.

### B. Howard's actions were a direct and proximate cause of the government's damages.

The key issue is whether the government was directly and proximately harmed as a result of Howard's actions. 18 U.S.C. §§ 3563(b)(2), 3663(a)(2), 3663A(a)(2).

Under 18 U.S.C. § 3563(b)(2) the "court may provide, as further condition [] of a sentence of probation . . . that the defendant . . . make restitution to a *victim* of the offense under section 3556. . . ." (emphasis added). A victim is a "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2); *see United States v. Wilcoxon*, No. 5:19-po-00195, 2022 WL 1094776, at *4 (W.D. Ky. Apr. 12, 2022) (observing that "18 U.S.C. § 3563(b)(2)'s 'victim of the offense' language is . . . virtually identical to that of 18 U.S.C. § 3663(a)(2)"). "The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but-for' and proximate causes analyses." *In re McNulty*, 597 F.3d 344, 350 (6th Cir. 2010). These tests contemplate that the "harm to the victim [must] be closely related to the conduct inherent to the offense, rather than merely tangentially linked." *Id.* at 352. But even when multiple defendants may have contributed to a loss, the Sixth Circuit holds that a court may impose "full liability on any defendant who the

---

[1] In their sentencing memoranda, the parties disputed whether the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applied. The government renews this argument on appeal by contending that restitution is permitted under 18 U.S.C. § 3663A. But there is no need to discuss this issue further since both parties agree that the Magistrate Judge was permitted to order restitution under 18 U.S.C. § 3563(b)(2) as a condition of probation. *See United States v. Kilpatrick*, 798 F.3d 365, 391 (6th Cir. 2015); *Gall v. United States*, 21 F.3d 107, 111 (6th Cir. 1994).

. . . court finds 'contributed to the loss.'" *United States v. Church*, 731 F.3d 530, 537 (6th Cir. 2013) (quoting 18 U.S.C. § 3664(h)).

### 1. But-for cause

The Magistrate Judge did not abuse his discretion in finding that Howard's actions were a cause in fact of the government's harm. The Magistrate Judge found substantial evidence showing that Howard added to the existing cut in the sandbank. During the bench trial, he found that the investigating officer saw Howard shovel the existing cut. (Trial Tr. 153). And the Magistrate Judge found that the officer saw him adding rocks to the "wing dam, which . . . divert[ed] and channel[ed] water towards that new opening." (*Id.*) The Magistrate Judge found that Howard even admitted this to be the case, "in his words, [Howard] enhanced what was already there. . . ." (*Id.* at 133). Moreover, the Magistrate Judge found that other witnesses saw him shoveling the new channel and manipulating the water flow by displacing rocks. (*Id.* at 153-155).

But-for Howard's additional digging and manipulation of rocks, the river would not have been diverted. Nor would the natural channel have dewatered impacting the surrounding wetlands and wildlife. It follows that but-for Howard's actions, the NPS and U.S. Coast Guard would not have investigated the environmental impact of the diversion, or the available remedies. This is exactly what the Magistrate Judge concluded at the sentencing hearing:

> The park service did a study. That's exactly what anyone should expect to happen under those circumstances. The damage has been done. The first thing you do is assess the damage and figure out what to do about it. What can be done about it? And ultimately the park service decided that attempting to put the river back in its original course would require heavy equipment and that the risk that that process posed to the environment would only have exacerbated and multiplied the damage done by opening the original trench, and so it elected not to do that. And I'll say this, Mr. Howard, I think if they had decided to do it, we'd be talking about a restitution number probably in the hundreds of thousands of dollars.

(Sentencing Tr. 24). Accordingly, the Court finds that the Magistrate Judge did not abuse his discretion in determining that Howard's conduct directly caused the government harm.

### 2. Proximate cause

The Court now turns to proximate cause. The Magistrate did not abuse his discretion in finding that Howard's actions were a proximate cause of the government's harm. As to proximate cause, "[t]he basic question . . . is whether the harm alleged has a sufficiently close connection to the conduct at issue"—*i.e.*, whether it is "foreseeable." *Robers v. United States*, 572 U.S. 639, 645 (2014) (internal quotation marks omitted). This test "requires proof that the loss suffered was a 'foreseeable consequence' of the wrongdoing." *U.S. v. Cummings*, 189 F. Supp. 2d 67, 76 (S.D.N.Y. 2002) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001)).

Here, it was reasonably foreseeable that Howard's conduct would enhance the diversion, thus, prompting the NPS and U.S. Coast Guard to assess damages and possible remedies. The Magistrate Judge found that "there is no question [Howard] foresaw the damage because [he] told the officer [he] came down there intending to cut open that channel." (Sentencing Tr. 24; Government's Ex. A at 00:34-00:43). The Court finds that the expense of the investigation and assessment of the diversion was foreseeable and even necessary because the government had an interest in protecting wildlife, wetlands, and plants. The NPS had previously demonstrated it had an interest in protecting wildlife in around the Platte River; that was, after all, why it banned dredging in the first place. Thus, the Court finds that the Magistrate Judge did not abuse his discretion in finding that the government's investigation costs related to the river diversion were foreseeable. *See, e.g.*, *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004) (finding that the costs of a site investigation to "determine what damage the defendant's conduct caused and to

9

design an appropriate cleanup plan" were foreseeable harms); *see also United States v. Sawyer*, 825 F.3d 287, 293 (6th Cir. 2016) (citation omitted) ("Section 3663A(c)(1)(B) aims to compensate victims of certain crimes, not only for physical injuries but also for solely economic harm."). Nor did the Magistrate Judge abuse his discretion in declining to apportion restitution because a single criminal defendant may be held jointly and severally liable for the full restitution. *See United States v. Hunt*, 521 F. 3d 636, 649 (6th Cir. 2008) (citing 18 U.S.C. § 3664(h)).

## II. Howard's arguments to the contrary are unavailing.

Howard makes three contrary arguments in his appeal. The Court considers each but finds them unavailing.

First, Howard argues that he was not solely responsible for the government's damage; as a result, he should not be on the hook for the full damage. On this record, it is true that one or more others contributed to the harm, but that is legally beside the point. There is no rule that limits restitution liability only to the marginal contribution of the defendant's conduct; to the contrary, a mere scintilla of contribution can put the defendant on the hook for it all, jointly and severally with everyone else. *See United States v. Church*, 731 F.3d 530, 538 (6th Cir. 2013); *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012) (quoting *United States v. Kennedy*, 643 F.3d 1251, 1262-63 (9th Cir. 2011)); *United States v. Quackenbush*, 9 F. App'x. 264, 268 (4th Cir. 2001).

Second, he argues that the NPS would have incurred the same expenses even if he had not contributed in his own way. That is because, says Howard, the pre-existing cut would ultimately lead to the same result. The legal problem with this argument is the same as in his first. But here the record also undercuts his argument. The Magistrate Judge found that Howard moved sand and rocks, which enhanced the pre-existing cut in the sandbar and ultimately diverted the river. (Trial Tr. 154; Sentencing Tr. 24). Furthermore, he found that Howard impacted the area's ecological

10

system, "like the plants and animals that were living in the original riverbed and what happened to them after the water was diverted and that area dried up." (Trial Tr. 156-57). And on a broader scale, the Magistrate Judge found that Howard harmed neighbors of Platte River who depended on the natural channel and even kayakers who would prefer the river's natural path. (*Id.*) The Court rejects Howard's argument that his marginal contribution caused no additional harm.

Third, Howard contends that the NPS's decision to opt for no remediation means it cannot recover the expenses of investigation and assessment. Not so. The investigation was necessary and foreseeable in light of Howard's conduct and the government's ecological interests in Sleeping Bear Dunes. *See United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) ("The expense of the internal investigations was necessary because the entity had interests to protect (the integrity of its ongoing operations and reputation, at the least) as well as a duty to protect those interests when faced with evidence of misconduct. . . ."). The fact that the NPS ultimately decided not to engage in remedial measures does not convert the environmental impact investigation into a criminal investigation such that the government cannot recover its costs. As acknowledged by the Magistrate Judge during sentencing, the government's decision was a stroke of good fortune for Howard, as the remedial costs would doubtless have been included in the government's request for restitution and far exceeded the investigation costs.

The parties agree that the Magistrate Judge had a lawful basis to award restitution as a condition of probation for expenses that were the but-for and proximate result of Howard's conduct. The Court finds that the Magistrate Judge had ample evidentiary basis for concluding that the expenses incurred by the NPS here were both the but-for and proximate result of Howard's conduct. He committed no clear error or abuse of discretion in so finding.

11

## CONCLUSION

The Magistrate Judge committed no clear error or abuse of discretion in ordering Howard to pay $22,472.22 in restitution as a condition of his probation.  The Court affirms.

Dated: February 13, 2025         /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 UNITED STATES DISTRICT JUDGE